IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| JOSHUA CACHO,<br><br>  Plaintiff,<br><br>v.<br><br>QUOTEWIZARD.COM, LLC, a Delaware Limited Liability Company, and SIMPLYIOA, LLC, a Florida Limited Liability Company<br><br><br><br>  Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |



6:22-cv-1917-CEM-LHP

FILED 2022 OCT 18 PM 2:01 US DISTRICT COURT MIDDLE DISTRICT OF FLORIDA ORLANDO, FLORIDA

**PLAINTIFF'S ORIGINAL COMPLAINT**

**PARTIES**

1. The Plaintiff is JOSHUA CACHO ("Plaintiff") a natural person, resident of the Middle District of Florida, and was present in Florida for all calls, in this case in Seminole County, Florida.

2. Defendant QUOTEWIZARD.COM, LLC ("Wizard") is a Limited Liability Company organized and existing under the laws of Delaware with its principal address at 157 Yesler Street, Suite 400, Seattle, Washington 98104 with a foreign Limited Liability Company registration in Florida, and can be served via registered agent Incorp Services, Inc. at 17888 67th Court North, Loxahatchee, Florida 33470.

3. Defendant SIMPLYIOA, LLC ("Simply") is Limited Liability Company organized and existing under the laws of Florida with its principal address at 1855 West S.R. 434, Longwood,

1

Florida 32750 and can be served via registered agent Corporation Service Company 1201 Hays Street, Tallahassee, Florida 32301.

4. Defendants Wizard and Simplyare hereinafter collectively referred together as "Defendants".

## JURISDICTION AND VENUE

5. Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

## PERSONAL JURISDICTION

6. This Court has general personal jurisdiction over the Defendants because they have repeatedly placed calls to Florida residents, and derived revenue from Florida residents, and they sell goods and services to Florida residents, including the Plaintiff.

7. Defendants maintain sufficient minimum contacts with this District, have purposefully availed themselves of the privilege of doing business in this District, maintain registered agents in Florida, and possess such significant and continuous presence in this District such as to be subject to the personal jurisdiction of this Court.

## VENUE

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Florida residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District.

9. This Court has venue over Defendants because the calls at issue were sent by or on behalf of the above-named Defendants to Plaintiff, a Florida resident.

## THE TELEPHONE CONSUMER PROTECTION ACT

## OF 1991, 47 U.S.C. § 227

10. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

11. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

12. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

13. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

14. Separately, the TCPA banstelemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

15. The TCPA provides a private cause of action to persons who receive calls in violation of

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

§ 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

16. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

17. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

18. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

19. *In theMatter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

20. The FCC confirmed this principle in 2013, when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either

4

section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

21. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

22. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

23. Plaintiff's personal cell phone (407) 577-3881 has been registered on the National Do-Not-Call Registry since July 2, 2021.

24. Plaintiff never asked the National Do-Not-Call Registry administrator to remove him from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

25. Defendants Wizard and Simply both work as an "insurance broker" for multiple different insurance providers. *See Exhibit A*.

26. Defendants Wizard and Simply provide potential customer leads with each other.

27. As part of their marketing Defendants Wizard and Simply hire and authorize telemarketers to make unauthorized phone callsto consumers *en masse* using an automatic

5

telephone dialing system ("ATDS") to solicit home and auto insurance policies on behalf of Defendants Wizard and Simply.

28. Defendants Wizard and Simply approve of the contracts with these telemarketers.

29. Defendant Wizard and Simply both pay the telemarketers out of bank accounts they own and control.

30. Defendants Wizard and Simply are well aware that the telemarketers they hire to solicit on their behalf are violating the TCPA by making unauthorized phone calls to consumers using an ATDS.

Defendant Wizard has been sued in a class action prior to this lawsuit for violating the TCPA *Perrong v. Quotewizard.com, LLC,* No. 2:20-cv-02506-JCJ (E.D.PA., May 28, 2020) and continues their illegal behavior because violating the TCPA benefits them financially.

31. Each and every time Defendants Wizard and Simply sells an insurance policy to a consumer that originated from their telemarketer it benefits both Defendants financially.

32. Plaintiff received at least three (3) unauthorized phone calls to his personal cell phone 3881 from telemarketers calling on behalf of Defendants Wizard and Simply and at least two (2) unauthorized direct phone calls from Defendants Wizard and Simply all within a seven-day period ("the calls").

33. The calls Plaintiff received from or on behalf of Defendants Wizard and Simply solicited Plaintiff for auto insurance.

34. With information and belief Plaintiff has received more phone calls from or on behalf of Defendants Wizard and Simply within the past two years that are unknown to Plaintiff at this time and will be revealed during discovery.

35. On July 29, 2022, Plaintiff received a phone call to his personal cell phone 3881 from a

6

telemarketer calling on behalf of Defendants Wizard and Simply from phone number (386) 282-5664.

36. Plaintiff answered and there was a 3-4 second delay followed by an audible beep (indicating the call was made using an ATDS) before being connected to a male telemarketer named Steve that stated he was with "auto insurance services."

37. Defendants Wizard and Simply instruct their telemarketers not to reveal their true identity and to use a generic name such as "auto insurance services" for the sole purpose of ducking liability for violating the TCPA.

38. Steve advised Plaintiff the call was about auto insurance and stated to Plaintiff, "if we could save you up to thirty percent on what you are paying right now would you consider switching?"

39. Plaintiff was extremely annoyed and frustrated for receiving the same phone calls from telemarketers calling from "auto insurance services" soliciting auto insurance services and advised Steve he was interested in an auto insurance quote for the sole purpose of identifying the companies responsible for the calls.

40. Steve then gathered Plaintiff's vehicle information, insurance provider, personal information, and advised Plaintiff he would be contacted by an "insurance rate specialist" shortly that would help Plaintiff save some money on his insurance.

41. Steve did not know Plaintiff's name prior to asking him for it which is another indication the call was made using an ATDS and could have reached anyone in the United States.

42. About thirty minutes later at 1:14 PM Plaintiff had a missed call from phone number (407) 392-3291.

43. About thirty minutes later after the missed call at 1:49 PM Plaintiff received another phone call from the same phone number (407) 392-3291 from a representative named Kevin that

7

stated he was with "QuoteWizard."

44. Kevin stated to Plaintiff, "was calling to see if you had a moment to go over your auto insurance quote."

45. The call from Kevin was a follow up from the call Plaintiff received from Steve which confirmed one of the companies responsible for the calls.

46. Kevin advised Plaintiff he just had some quick follow up questions before connecting him to an agent that can assist Plaintiff.

47. Kevin confirmed Plaintiff's vehicle and personal information and solicited Plaintiff for auto insurance services on behalf of Defendants Wizard and Simply.

48. Kevin stated to Plaintiff,

"if we find a plan that meets your needs at a price you like would you be looking to switch your insurance plan within the next thirty days?"

49. Kevin then transferred Plaintiff to a "licensed auto insurance agent" from Defendant Simply named Jasmine Harris.

50. Jasmine stated to Plaintiff,

"SimplyIOA, Simply Insurance of America we're insurance brokers we work with over fifteen different insurance companies to find the best pricing for you."

51. Jasmine provided Plaintiff with their company website https://www.simplyioa.com which confirmed the other company responsible for the calls.

52. Jasmine then confirmed Plaintiff's vehicle information and solicited Plaintiff for an auto insurance policy from Progressive on behalf of Defendants Wizard and Simply.

53. Jasmine advised Plaintiff the Progressive insurance policy would be $338/mnth.

54. If Plaintiff would have enrolled into the Progressive insurance policy Defendants Wizard and Simply would get paid a monthly commission from Progressive insurance as long as

8

Plaintiff would keep the policy.

55. Plaintiff received an email from Jasmine from jasmine.harris@simplyioa.com that contained the Progressive auto insurance quote. *See Exhibit B.*

56. Each and every phone call Plaintiff received from or on behalf of Defendants Wizard and Simply was a telephone solicitation as defined by 47 U.S.C. § 227(a)(4) and solicited an auto insurance policy to Plaintiff on behalf of Defendants Wizard and Simply.

57. Plaintiff did not ask Defendants Wizard and Simply to call him regarding auto insurance services.

58. Plaintiff did not seek or solicit, Defendants Wizard or Simply phone calls or services in any way.

59. Table A displays the calls made to Plaintiff from or on behalf Defendants:

TABLE A

| **Number:** | **Date** | **Time** | **Caller ID** | **Notes** |
|---|---|---|---|---|
| 1 | 07/22/2022 | 5:59 PM | 386-749-1552 | Male telemarketer calling from auto insurance services |
| 2 | 07/26/2022 | 5:57 PM | 407-407-1163 | Male telemarketer calling from auto insurance services |
| 3 | 07/29/2022 | 12:06 PM | 386-282-5664 | Male telemarketer Josh calling from auto insurance services |
| 4 | 07/29/2022 | 1:14 PM | 407-392-3291 | Missed call |
| 5 | 07/29/2022 | 1:49 PM | 407-392-3291 | Kevin from QuoteWizard. Transferred to Jasmine from SimplyIOA. |

60. Defendants' telemarketers initiated numerous unsolicited telephone calls and made unlawful telemarketing sales pitches to Plaintiff regarding auto insurance services on behalf of

9

Defendants Wizard and Simply.

61. No emergency necessitated none of the alleged phone calls.

62. Plaintiff sent an internal do-not-call policy request to Defendant Wizard to privacy@lendingtree.com on October 11, 2022, which is an email listed in the "privacy policy" on the website they own and control https://quotewizard.com.

63. Plaintiff sent an internal do-not-call policy request to Defendant Simply to socialmedia@simplyioa.com on October 11, 2022, which is an email listed on their face book page they own and control https://www.facebook.com/SimplyIOA.

64. Despite these emails, Defendants Wizard and Simply failed and/or refused to send Plaintiff a do-not-call policy.

65. Upon information and belief, the Defendants did not have a written do-not-call policy while they were sending Plaintiff the calls.

66. Upon information and belief, the Defendants did not train their agents who engaged in telemarketing on the existence and use of any do-not-call list.

67. Such conduct violates the TCPA and its implementing regulations, 47 CFR § 64.1200(d)(3)(requiring telemarketers to honor and record DNC requests when made).

68. Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

### VICARIOUS LIABILITY OF DEFENDANTS WIZARD AND SIMPLY

69. Defendants are vicariously liable for the telemarketing calls that generated the lead on their behalf.

70. The FCC is tasked with promulgating rules and orders related to enforcement of the TCPA. 47 U.S.C. § 227(b)(2).

71. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

72. The FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf of" liability in the context of an autodialed or prerecorded message callsent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

73. The FCC confirmed this principle in a declaratory ruling holding that sellers such as Post may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because sellers may have thousands of independent marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted) (alteration marks and internal quotation marks omitted).

74. More specifically, *Dish* held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586 ¶ 34.

75. The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 ¶ 36 & n.107.

76. To the contrary, the FCC—armed with extensive data about robocalls and Americans' complaints about them—determined that vicarious liability is essential to serve the TCPA's remedial purpose of protecting Americans from "unwanted telemarketing invasions." *Id.* at 6587 ¶ 36.

77. Vicarious liability is important because reputable, traceable, and solvent companies that benefit from illegal telemarketing are "in the best position to monitor and police TCPA compliance by third-party telemarketers." *Id.* at 6588 ¶ 37.

78. Defendants are legally responsible for ensuring that the affiliates that make telemarketing calls on their behalf comply with the TCPA when so doing.

79. Defendants knowingly and actively accepted business that originated through illegal telemarketing.

80. Defendants knew (or reasonably should have known) that their telemarketer was violating the TCPA on their behalf but failed to take effective steps within their power to force the telemarketer to cease that conduct.

81. By hiring a company to make calls on their behalf, Defendants "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency ("Restatement").

82. Moreover, Defendants maintained interim control over the actions of its telemarketers.

83. For example, Defendants had absolute control over whether, and under what circumstances, they would accept a customer from its telemarketers.

84. Furthermore, Defendants had day-to-day control over the actions of its telemarketers, including the ability to prohibit them from using an ATDS to contact potential customers of Defendants and the ability to require them to respect the National Do Not Call Registry.

85. Defendants also gave interim instructions to its telemarketers by providing lead-qualifying instructions and lead volume limits.

86. Defendants donned its telemarketers with apparent authority to make the calls at issue. Thus, the telemarketers pitched auto insurance services in the abstract.

87. Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c.

88. "[A]pparent authority can arise in multiple ways and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

89. A principal may make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

90. Defendants' telemarketers transferred customer information, including Plaintiff's contact information, directly to Defendants. Thus, the telemarketer had the "ability . . . to enter consumer

information into the seller's sales or customer systems," which the FCC has explained to show apparent agency. *Dish*, 28 FCC Rcd. at 6592 ¶ 46.

91. Finally, the FCC has held that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

92. Defendants are the liable party as the direct beneficiary of the illegal telemarketingas they stood to gain Plaintiff as a customer when telemarketers solicited Plaintiff foran auto insurance policy on their behalf.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

93. Defendants' calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

94. Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

95. Defendants' calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

96. Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of my cell phone.

**Plaintiff's cell phone is a residential number**

97. The calls were toPlaintiff's cellular phone 3881 which is Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

## CAUSES OF ACTION:

### COUNT ONE:
### Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent

98. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

99. Defendants and/or their affiliates or agents violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), at leastthree (3) times by placing non-emergency telemarketing calls to Plaintiff's cellular telephone number using an automatic telephone dialing systemwithout prior express written consent.

100. Plaintiff was statutorily damaged at least three (3) times under 47 U.S.C. § 227(b)(3)(B) by Defendants by the telephone calls described above, in the amount of $500.00 per call.

101. Plaintiff was further statutorily damaged because Defendants willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount to $1,500.00 as permitted under U.S.C. § 227(b)(3)(C) for each and every willful and/or knowing violation.

102. Plaintiff is also entitled to and does seek an injunction prohibiting Defendants and their affiliates and agents from violating the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by placing non-emergency telemarketing calls to any cellular telephone number using an ATDS without prior express written consent.

## COUNT TWO:

### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))

103. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

104. Defendants called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls for the purposes of commercial solicitation, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

105. Plaintiff was statutorily damaged at least five (5) times under 47 U.S.C. § 227(c)(3)(F) by Defendants by the telemarketing calls described above, in the amount of $500.00 per call.

106. Plaintiff was further statutorily damaged because Defendants willfully and/ or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

107. Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## COUNT THREE:

16

### Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)

### (Against All Defendants)

108. Plaintiff incorporates the forgoing allegations as if fully set forth herein.

109. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking the following:

   a. A written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1)$^2$;

   b. Training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2)$^3$; and,

   c. In the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).$^4$

110. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

111. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Joshua Cacho prays for judgment against the defendants jointly and severally as follows:

---

$^2$*Seeid.* at 425 (codifying a June 26, 2003 FCC order).
$^3$*Seeid.* at 425 (codifying a June 26, 2003 FCC order).
$^4$*Seeid.* at 425 (codifying a June 26, 2003 FCC order

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendants violate the TCPA law;

C. An award of $1500 per call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporations for 3 calls.

D. An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporations for 5 calls.

E. An award to Plaintiff of damages, as allowed by law under the TCPA;

F. An award to Plaintiff of interest, costs and attorneys' fees, as allowed by law and equity.

G. Such further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

October 14, 2022,                    Respectfully submitted,

Joshua Cacho
Plaintiff, Pro Se
164 Estella Road
Lake Mary, Florida 32746
407-577-3881
Bostonreds.85@gmail.com